## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 24-44** |
| **ODINE DOMINICK** | **SECTION I** |

## ORDER AND REASONS

Before the Court is the government's notice[1] of intent to use evidence pursuant to Federal Rule of Evidence 404(b). Defendant Odine Dominick ("defendant") filed a response in opposition.[2] The government filed a reply.[3] For the reasons stated below, the Court will review the disputed evidence at trial pursuant to the guidelines set forth herein.

## I. BACKGROUND

Defendant has been charged in a three-count superseding indictment.[4] Count one charges that, on or about December 14, 2023, defendant possessed with the intent to distribute controlled substances—specifically 40 grams or more of a mixture or substance containing a detectable amount of fentanyl and a quantity of mixture or substance containing a detectable amount of marijuana—in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 841(b)(1)(D).[5] Count two charges that, on or about December 14, 2023, defendant possessed a firearm in furtherance of a drug-

---

[1] R. Doc. No. 48.
[2] R. Doc. No. 54.
[3] R. Doc. No. 59.
[4] R. Doc. No. 42.
[5] *Id*. at 1.

trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).[6] Count three charges that, on or about December 14, 2023, defendant, being a felon, possessed a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[7]

Count three alleges that defendant has three prior felony convictions: a 2008 conviction in Orleans Parish for attempted possession with intent to distribute cocaine, a 2013 conviction in the Eastern District of Louisiana for conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing heroin, and a 2017 conviction in St. Bernard Parish for being a felon in possession of a firearm.[8]

In addition, the government filed an information pursuant to 21 U.S.C. § 851 to establish a final prior conviction of a serious drug felony—namely, a conviction for conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.[9] If established at trial, this prior conviction would subject defendant to a sentencing enhancement pursuant to § 841(b)(1)(B).

According to the government's notice of intent, law enforcement officers ("LEOs") discovered evidence of criminal activities by observing defendant's Instagram account.[10] In a November 23, 2023 Instagram post ("the November 23

---

[6] *Id.* at 2.
[7] *Id.*
[8] R. Doc. No. 42, at 2.
[9] R. Doc. No. 52.
[10] R. Doc. No. 48, at 1.

post"), defendant was pictured with a rifle magazine.[11] Later, in a December 3, 2023 Instagram video ("December 3 video"), a black Glock handgun was pictured.[12] Based in part on these incidents, LEOs obtained a search warrant for both sides of the double shotgun house where defendant resided.[13] Defendant's listed address, 1130 Piety, was one side of the double, and LEOs observed defendant entering and exiting the other side of the double, 1128 Piety, during surveillance.[14]

On December 14, 2023, LEOs executed the search warrant. LEOs did not find evidence of the instant offenses in 1130 Piety.[15] However, in 1128 Piety, LEOs did find such evidence. In the downstairs living area, LEOs found several vacuum sealed bags of marijuana totaling over one kilogram, multiple digital scales, plastic baggies commonly used to package drugs for distribution and approximately 400 rounds of various calibers of ammunition.[16]

In addition, LEOs noticed a hole in the ceiling below the attic as well as drywall on the kitchen floor.[17] LEOs had also noticed that defendant had dust and scratches on his legs when he exited the residence.[18] Together, these observations suggested to LEOs that the hole was recently made.[19] Inside the attic, LEOs found a black Glock

---

[11] *Id.*
[12] *Id.*
[13] *Id.* at 2.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

handgun similar to the gun in the December 3 video.[20]  LEOs also found two Ziplock bags each containing a brown powder substance, which was later determined by the NOPD Crime Lab to be a mixture of heroin and fentanyl with a total net weight of 112.83 grams.[21] In addition, LEOs recovered a keyring. The keyring contained a key fob that unlocked a stolen Dodge charger that LEOs located near defendant's residence.[22] This key fob appeared to be attached to defendant's pants in the November 23 post.[23] The Instagram material posted on December 3, 2023 also showed defendant in a Dodge charger.[24] Besides the key fob for the Dodge, the keyring discovered in the attic also had a key that operated the deadbolt lock for 1128 Piety.[25]

## II. STANDARD OF LAW

Federal Rule of Evidence 404(b)(1) prohibits the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, pursuant to Federal Rule of Evidence 404(b)(2), such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

For the purposes of Rule 404(b), the phrase "any other crime, wrong, or act" refers to "only those acts that are 'extrinsic' to the crimes charged in the indictment."

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 1.
[24] *Id.*
[25] *Id.* at 2.

*United States v. Holmes*, No. 23-cr-229, 2025 WL 918701, at *2 (E.D. La. Mar. 26, 2025) (Vance, J.). Accordingly, evidence of an act "intrinsic" to the charged offense is not subject to the requirements of Rule 404(b) because an intrinsic act does not implicate the rule. *See United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010). Intrinsic evidence of other crimes, wrongs, or bad acts is "generally admissible." *United States v. Jimenez-Elvirez*, 862 F.3d 527, 536 (5th Cir. 2017)

An "other act" is considered intrinsic (1) if the evidence of the other act and the evidence of the crime charged are inextricably intertwined, or (2) if both acts are part of a single criminal episode, or (3) if the other act was necessarily preliminary to the crime charged. *See id.* "Intrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place and to evaluate all of the circumstances under which the defendant acted." *Rice*, 607 F.3d at 141 (internal quotation marks and citations omitted).

If an act is extrinsic to the charged offense, courts apply a two-step test originating in the Fifth Circuit's opinion in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), to determine whether evidence of the act is admissible pursuant to Rule 404(b). *See United States v. Age*, 136 F.4th 193, 220 (5th Cir. 2025). The government bears the burden to demonstrate that evidence of an extrinsic act is admissible pursuant to Rule 404(b). *See United States v. Valenzuela*, 57 F.4th 518, 521 (5th Cir. 2023).

At the first step, the court must determine whether "the extrinsic offense evidence is relevant to an issue other than the defendant's character." *Id.* (internal

quotation citation omitted). "An extrinsic act is relevant to an issue other than the defendant's character if it is offered to prove one of the elements listed in Rule 404(b): 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Kinchen*, 729 F.3d 466, 472 (5th Cir. 2013) (quoting Fed. R. Evid. 404(b)). At this step, the relevance of an extrinsic act "is a function of its similarity to the offense charged" and is adjudged by the standards established by Federal Rule of Evidence 401. *See Beechum*, 582 F.2d at 911. "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor."[26] *Huddleston v. United States*, 485 U.S. 681, 689 (1988).

At the second step, the court must ensure that the evidence "possess probative value that is not substantially outweighed by its undue prejudice" and meet the other requirements of Federal Rule of Evidence 403. *See Age*, 136 F.4th at 220 (internal quotation marks omitted). The probative value of extrinsic evidence is not measured absolutely. *See Beechum*, 582 F.2d at 914. Rather, the pertinent probative value of

---

[26] The U.S. Supreme Court has stated that whether the government has offered sufficient evidence to support a finding that a similar act occurred is governed by Federal Rule of Evidence 104(b). *See Huddleston v. United States*, 485 U.S. 681, 689 (1988). "In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence." *Id.* at 690. Rather, "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact—here, that the televisions were stolen—by a preponderance of the evidence." *Id.*

extrinsic evidence is its incremental probative value "with regard to the extent to which [the Rule 404(b) element at issue] is established by other evidence, stipulation, or inference." *See id.*; *United States v. Templeton*, 624 F.3d 215, 221 (5th Cir. 2010); *cf. Old Chief v. United States*, 519 U.S. 172, 184 (1997) (explaining that, for Rule 403 purposes, probative value is "calculated by comparing evidentiary alternatives").

At this second step, courts consider (1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic act and the charged offense, (3) the amount of time separating the extrinsic act and the charged offense, and (4) the court's limiting instructions. *See Age*, 136 F.4th at 220. "The task for the court in its ascertainment of probative value and unfair prejudice under [R]ule 403 calls for a commonsense assessment of all the circumstances surrounding the extrinsic [act]." *Beechum*, 582 F.2d at 914.

## III. ANALYSIS

In its notice, the government seeks to admit material from defendant's Instagram account and information relating to defendant's prior convictions. With respect to the Instagram material, the government seeks to introduce three categories of evidence. First, the government seeks to admit screenshots of the November 23 post and screenshots of the December 3 video.[27] Second, the government also seeks to admit Instagram videos depicting distributable quantities of marijuana with captions displaying marketable names for the marijuana.[28] This Instagram material

---

[27] *Id.* at 3–4.
[28] *Id.* at 4.

dates from February 1, 2023.[29] Third, the government seeks to admit videos and photographs showing defendant in possession of large amounts of cash and luxury items.[30] The government does not provide the date range for this Instagram material. Finally, the government seeks to introduce evidence regarding defendant's three prior felony convictions.[31] The Court will assess the admissibility of each category of evidence in turn.

Prior to commencing its analysis, the Court makes two points. First, the Court will defer ruling on the admissibility of extrinsic evidence at this juncture. Whether evidence is admissible pursuant to Rule 404(b) turns on its incremental probative value and its potential for undue prejudice. *See Beechum*, 582 F.2d at 914. To assess the incremental probative value of extrinsic evidence and its potential for undue prejudice, the Court must first see what other evidence the government will introduce at trial. Accordingly, it would be premature for the Court to rule definitively on the admissibility of extrinsic evidence at this time. For this reason, the Court's determinations below as to the admissibility of the extrinsic evidence are preliminary.

Second, the Court's analysis of the admissibility of the Instagram material as either intrinsic or extrinsic evidence assumes that the Instagram material will be authenticated pursuant to Federal Rule of Evidence 901 with respect to what the government claims it is. The Court will defer all rulings on the authenticity of the

---

[29] *Id.* at. 9.

[30] *Id.* at 5.

[31] *Id.* at 6.

Instagram material until trial. Accordingly, the Court's preliminary determinations of admissibility may change given whether the government will satisfy its burden to authenticate the Instagram material.

**a. Screenshots of the November 23 Post and the December 3 Video**

The Court finds that the screenshots of the November 23 post are admissible as intrinsic evidence and that the screenshots of the December 3 video may be admissible as extrinsic evidence pursuant to Rule 404(b).

*i. Admissibility of the November 23 post as intrinsic evidence*

The November 23 post allegedly shows defendant with the key fob for the stolen Dodge charger attached to his pants.[32] In addition, the sweatshirt and mask that defendant wore in the November 3 post were recovered in 1128 Piety.[33] According to the government, these connections are evidence that the drugs, ammunition, and guns found in 1128 Piety were in the possession of defendant even though 1130 was his listed address.[34] Such evidence is therefore intrinsic because it "is inextricably intertwined with the evidence regarding the charged offense[s]." *See Age*, 136 F.4th at 220.

In reaching its conclusion, the Court has taken into account the temporal proximity of the November 23 post with the crimes charged. The November 23 post and the seizure of evidence on December 14, 2023 occurred within three weeks of each other while defendant was under observation or surveillance by LEOs. Given this

---

[32] *Id.* at 8–9.
[33] *Id.*
[34] *Id.* at 9.

9

temporal proximity, the Court is satisfied that the November 23 post is intrinsic insofar as it completes the story of the charged crimes as opposed to merely completing the story of the investigation. *See Rice*, 607 F.3d at 141.

### *ii. Admissibility of the December 3 video pursuant to Rule 404(b)*

On the contrary, the screenshots of the December 3 video are not intrinsic. The government's theory with respect to defendant's possession of the handgun is that defendant constructively possessed the handgun discovered in the attic during the search on December 14, 2023.[35] Since the government's theory focuses on that date, the screenshots of the December 3 video are at most evidence of a possession on a separate occasion.

First, the December 3 video is not inextricably intertwined with the evidence of the offense. The government is using this evidence to show "context . . . for the search and how this case came to be."[36] However, evidence is not inextricably intertwined with evidence of the charged offenses simply because it is evidence of the investigation of the crime. The government does not explain why its evidence of the charged offenses could not be introduced independently of the December 3 video. Accordingly, it has not met its burden of demonstrating that the December 3 video is intrinsic evidence insofar as it is inextricably intertwined with the offenses charged in the superseding indictment.

---

[35] R. Doc. No. 42, at 12.
[36] R. Doc. No. 48, at 8.

Second, the defendant's possession of a handgun on a separate occasion over ten days prior to his alleged constructive possession of the gun is too remote in time to be part of the same criminal episode. *Cf. Rice*, 607 F.3d at 141 (holding that defendant's four unsuccessful robbery attempts were part of a "unified criminal episode" and therefore intrinsic to the charged carjacking because they "occurred within a few hours of each other and involved the same group of co-conspirators"); *United States v. Williams*, 30 F.4th 263, 267 n.3 (5th Cir. 2022) (stating that "the excluded evidence involves conduct that is too dissimilar and distant in time from the charged offenses to be intrinsic"). Third, defendant's alleged possession of the handgun in the December 3 video is not necessarily preliminary to his constructive possession of the gun on December 14, 2023.

However, the screenshots of the December 3 video may be admissible as extrinsic evidence. Prior evidence of firearm possession is relevant for Rule 404(b) purposes in constructive-possession cases where "knowledge and intent are frequently at issue." *United States v. Jones*, 484 F.3d 783, 788 (5th Cir. 2007); *United States v. Williams*, 620 F.3d 483, 489 (5th Cir. 2010) ("In the context of a weapon-possession case, Rule 404(b) evidence of intent is relevant to a theory of constructive possession, but not to a theory of actual possession."). The defendant's knowledge and intent are relevant in such cases because, to prove a defendant's constructive possession of an item, the government "must offer evidence to prove that the defendant (1) knew that the thing was present, and (2) intended to exercised dominion or control over it." *Jones*, 484 F.3d at 788. Since the government intends to

prove defendant's constructive possession of the handgun on December 3, 2023,[37] screenshots of the December 3 video are relevant to a Rule 404(b) element besides defendant's character—namely, his knowledge and intent with respect to his constructive possession of the handgun. Accordingly, step one of the *Beechum* test is satisfied. *See Williams*, 620 F.3d at 491 ("The evidence [of defendant's prior arrests for gun possession] was relevant to the elements of constructive possession, so the first prong of the *Beechum* test is satisfied.").

Step two may well be satisfied. Screenshots of the December 3 video may have considerable probative value. *See id.* ("Prior acts, especially those involving possession, are highly probative of a defendant's intent." (internal quotation marks omitted)). First, the story was close in time to the charged offense—ten days before the seizure of evidence. Second, the similarity between the prior wrong and the charged wrong is significant, as both allegedly concern a black Glock handgun. *See Beechum*, 582 F.2d at 915 ("In measuring the probative value of the evidence, the judge should consider the overall similarity of the extrinsic and charged offenses.").

With respect to whether the probative value of this evidence could be substantially outweighed by the risk of undue prejudice, the Court recognizes that the government has a need of this evidence. *See id.* at 492 ("Prior act evidence is often a necessity in constructive possession cases."). Further, the Court is confident that, if requested, a limiting instruction advising the jury that the December 3 video is not evidence that defendant actually possessed the firearm on the date charged in the

---

[37] R. Doc. No. 42, at 12.

superseding indictment but serves only to demonstrate his knowledge and intent with respect to the seized firearm will minimize any prejudice from its admission. In light of the appropriate factors, the Court finds that the probative value of the December 3 video may not be substantially outweighed by its undue prejudice.

### iii. The authenticity of the screenshots

The Court now turns to defendant's arguments for exclusion. Defendant primarily argues that the screenshots of the November 23 post and of the December 3 video should be excluded because they are unauthenticated.[38] Specifically, defendant argues that the screenshots "are undated[] [and] do not contain any metadata to establish when the photograph was created and when it was uploaded."[39] Defendant's objection that the screenshots are unauthenticated is partially foreclosed.

Prior to the pretrial conference in this matter, the government filed a motion *in limine* to authenticate the Instagram materials in question.[40] Specifically, the government moved the Court to find, pursuant to Federal Rule of Evidence 902(11), that the Instagram records for the account "_dadon_9" that the government discovered are self-authenticating with respect to their being exact copies of the records kept by Meta and with respect to their timestamps.[41] The government attached a certification from a custodian of the records in accordance with Rule

---

[38] R. Doc. No. 54, ¶¶ 14–17.
[39] *Id.* ¶ 16.
[40] R. Doc. No. 50.
[41] R. Doc. No. 50-1, at 3.

902(11).[42] However, the government did not seek to authenticate the content of the materials.[43] It averred it will do so by "introduc[ing] evidence at trial from a witness who was investigating [defendant] and monitoring his Instagram account."[44]

At the pretrial conference, defense counsel stated that defendant did not oppose the government's motion.[45] Accordingly, the Court granted the government's motion as unopposed.[46] For this reason, defendant's objection that the Instagram screenshots are unauthenticated is overruled with respect to the timestamps of the screenshots and the accuracy of the records.

However, the government's burden of authentication with respect to the screenshots does not end there. As the government itself recognizes, it must still authenticate the contents of social media posts.[47] To authenticate evidence in accordance with Federal Rule of Evidence 901(a), "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Accordingly, the evidence that must be introduced to authenticate an item depends on what the item is claimed to be. Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies Rule 901(a), such as testimony of a witness with

---

[42] R. Doc. No. 50-5.

[43] *Id.* at 4.

[44] *Id.* The government reiterated this intention in its reply. *See* R. Doc. No. 59, at 2.

[45] R. Doc. No. 53, at 1.

[46] *Id.* at 2. The order read: "The Court finds that the certified court records attached as exhibits 1-3 to the motion are self-authenticating under Rule 902(4); and that, under Rule 902(11), the Instagram return for the "_dadon_9" account is an exact copy of the records made and kept in Meta's systems, and that photographs, videos, and communications were made at the timestamps reflected in the return." *Id.*

[47] R. Doc. No. 50-1, at 3–4; R. Doc. No. 59, at 2.

knowledge, Fed. R. Evid. 901(b)(1). Relevant here, "a witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it." *See United States v. Okulaja*, 21 F.4th 338, 344–45 (5th Cir. 2021) (cleaned up).

"The standard for authentication is not a burdensome one." *United States v. Barnes*, 803 F.3d 209, 217 (5th Cir. 2015) (cleaned up). Accordingly, "conclusive proof of authenticity is not required for the admission of disputed evidence." *Id.* Once an acceptable form of authenticating evidence has been introduced, "the trial court should admit the exhibit in spite of any issues the opponent has raised about flaws in the authentication because such flaws go to the weight of the evidence instead of its admissibility." *See Okulaja*, 21 F.4th at 344–45 (cleaned up). Ultimately, it is for the jury to decide "whether evidence is what its proponent says it is." *See id.*; *see also Barnes*, 803 F.3d at 217 ("[T]he jury holds the ultimate responsibility for evaluating the reliability of the evidence.").

The government intends to authenticate the screenshots of the November 23 post and the December 3 video by calling as a witness the LEO "who was investigating [defendant], observed the posts and videos contemporaneously on those dates, and took screenshots of the evidence."[48] Testimony from a witness with knowledge is a permissible way of authenticating social media posts. *See Barnes*, 803 F.3d at 217 (holding that Rule 901 was satisfied by the testimony of someone with knowledge

---

[48] R. Doc. No. 59, at 2.

even though such testimony did not definitively state the defendant had authored the social media messages). However, this testimony would not be sufficient to fully authenticate the screenshots with respect to what the government claims they are. At most, this testimony would serve as evidence that the screenshots do accurately capture what was posted on defendant's social media account. The government would still need to authenticate that the photos captured by the screenshots depict what the government claims they do. *See Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 768–69 (D. Md. 2014) ("While Plaintiff provides that these pictures are 'true and correct copies of photographs that [he] viewed on Facebook and Instagram,' such a statement is insufficient to authenticate the photographs as substantially correct representations of the behavior they purport to represent.").

The Fifth Circuit has recognized this need. In *United States v. Winters*, the defendant was charged with conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. 530 F. App'x 390, 393 (5th Cir. 2013) (unpublished). At trial, the government offered into evidence photos from the defendant's Facebook and MySpace accounts that depicted firearms and many kilograms of cocaine packaged for sale. *Id.* at 394. The government intended to introduce these photos as proof that the defendant had possession and control of the pictured weapons, money, and drugs. *Id.* at 395. Accordingly, the government had to produce authenticating evidence to support a finding that what was depicted in the photo—drugs and guns in the defendant's possession—"[was] what the [government] claim[ed] it [was]." *See* Fed. R. Evid. 901(a). To authenticate the photos as depicting drugs and guns in the

defendant's possession, the government relied on the testimony of an LEO who had found the photos on the defendant's accounts and the defendant's concession that the accounts were his own. *Winters*, 530 F. App'x 390 at 395.

The Fifth Circuit held that the government did not lay a proper foundation and therefore the photos were improperly admitted even though it was conceded that they were found on the defendant's social media accounts. *See id.* The Fifth Circuit reasoned that, "because the LEO was not able to recognize and identify the objects in the photos or show that the defendant, let alone any member of the conspiracy, had possession or control of the pictured items, a proper foundation was not laid." *Id.* It thus concluded that "[a] photograph's appearance on a personal webpage does not by itself establish that the owner of the page possessed or controlled the items pictured." *Id.* At bottom, *Winters* stands for the principle that the government, as the proponent of a photo posted on the defendant's social media account, must authenticate the assertedly relevant contents of the photo—even when the attribution of the photo to the defendant's social media account is not in question or in serious dispute.

The Court turns to consider the authentication of what the Instagram posts depict. With respect to the November 23 post, the government contends that it appears to depict defendant wearing a sweatshirt and mask that were recovered in 1128 Piety during the search as well as defendant in possession of what appears to be a rifle magazine as well as a key fob to the stolen Dodge Charger that was found in the attic along with the gun and Ziplock bags allegedly containing fentanyl.[49] The

---

[49] R. Doc. No. 48, at 3.

government intends to use the screenshots of the November 23 post as evidence that defendant resided at 1128 Piety, hid the drugs and handgun in the attic, and constructively possessed the handgun.[50]

For the government to use the November 23 post as evidence that defendant was wearing or in actual possession of certain items, the government must authenticate that defendant himself is pictured and that the items pictured are what the government says they are—*i.e.*, the items seized during the execution of the search at 1128 Piety. With respect to whether defendant himself is pictured, the jury may itself determine by its own inspection that defendant is pictured. The government can establish that the post depicts defendant in possession of those items in several ways, such as through the testimony of a witness with knowledge who can identify those items, *see* Fed. R. Evid. 901(b)(1), or by introducing the seized items into evidence and enabling the jury to compare what is depicted with the items that were seized, *see* Fed. R. Evid. 901(b)(3).

In his opposition, defendant contends that it is unclear whether the November 23 post depicts defendant because he is pictured with a mask and his face cannot be seen.[51] However, the government points out that there is a video in which defendant, pictured in the same sweatshirt as the November 23 post, removes his mask and so fully reveals his face.[52] The government seems to imply, though it is unclear, that

---

[50] *Id.* at 9.
[51] R. Doc. No. 54, ¶¶ 10–11.
[52] R. Doc. No. 48, at 3.

this video was part of or posted around the same time as the November 23 post.[53] If the video is what the government claims that it is—a video of defendant posted on defendant's social media depicting defendant wearing the same mask and sweatshirt as the figure in the November 23 post—then the video would serve as sufficient evidence to support a finding that defendant is the figure pictured in the November 23 post. It would therefore serve to authenticate the November 23 post as a depiction of defendant.

With respect to the December 3 video, the government will also have to offer evidence to authenticate the photo. The firearm photo seems to depict solely the gun.[54]  For this reason, using that photo as evidence of defendant's previous possession of a firearm is squarely prohibited by *Winters* without extrinsic evidence that defendant possessed the pictured gun. Sufficient extrinsic testimony includes testimony or evidence that identifies the gun or other features of the photo. C*f. United States v. Farrad*, 895 F.3d 859, 878 (6th Cir. 2018) (finding that photos posted on Facebook were sufficiently authenticated because "the photos appeared to show [defendant], his tattoos, and (perhaps most probatively) distinctive features of [defendant]'s apartment, as confirmed by police investigation").

With respect to both the November 23 post and the December 3 video, defendant remarks that the Instagram material posted on November 23 and December 3 are undated.[55] This argument is a red herring. The government is not

---

[53] *Id.*

[54] R. Doc. No. 48, at 4.

[55] R. Doc. No. 54, ¶¶ 11–13.

arguing that the material posted on Instagram on those dates depicted defendant on those dates. In fact, the government is not claiming anything about the dates of that material. Simply put, the fact that the Instagram material posted on November 23 and December 3 are undated does not defeat their authentication.

Since the Court does not have all the evidence before it that the government will introduce to authenticate the photos, the Court will defer ruling on the authenticity of the screenshots until trial.

### iv. Defendant's remaining arguments for exclusion

Apart from the issue of authentication, defendant challenges the screenshots on hearsay and prejudice grounds. With scant explanation, defendant argues that the screenshots are hearsay.[56] "Ordinarily, a photograph is non-assertive in nature and is not hearsay." *Collins v. Benton*, 571 F. Supp. 3d 498, 512 (E.D. La. 2021) (Brown, C.J.); *cf. United States v. Roscoe*, No. 23-60227, 2024 WL 1342606, at *3 (5th Cir. Mar. 29, 2024) (describing crime-scene photographs as "non-hearsay evidence"). The Court fails to discern, and defendant does not clearly explain, how the screenshots in question are assertive. Though the government asserts that the handgun in the screenshot is the same as that recovered from 1128 Piety, that assertion is the government's rather than the photograph's. Defendant seems to confuse this point.[57] Accordingly, defendant has not demonstrated the photos are inadmissible hearsay. *See Farrad*, 895 F.3d at 877 ("One small issue is worth addressing at the outset:

---

[56] R. Doc. No. 54, ¶ 16.

[57] *See id.*

whether, as Farrad has argued throughout, the pictures of guns were all out-of-court statements that Farrad illegally possessed a firearm and thus hearsay. They were not." (cleaned up)).

Finally, defendant argues that these screenshots should be excluded insofar as they are more prejudicial than probative.[58] However, defendant's cursory assertion of prejudice without explaining such prejudice does not suffice to exclude the evidence. Defendant has failed to demonstrate that the screenshots of the November 23 post unduly prejudice defendant in violation of Rule 403.

### b. Instagram Posts Depicting Marijuana

The second category of Instagram material that the government seeks to admit is "material from [defendant]'s Instagram account showing him engaged in trafficking marijuana."[59] For the sake of convenience, the Court will refer to this material collectively as "the marijuana posts." The marijuana posts include "several videos depicting distributable quantities of marijuana with captions displaying marketable names for the marijuana."[60] The government alleges that, in some of the videos, defendant can be heard narrating in the background.[61] Further, the government alleges that defendant sent these videos to other Instagram users.[62] The government explains that this category of Instagram material "begins February 1,

---

[58] *Id.* ¶ 17.
[59] R. Doc. No. 48, at 4.
[60] *Id.*
[61] *Id.*
[62] *Id.*

2023 and thus all evidence . . . is less than one year before [defendant]'s arrest on December 14, 2023."[63]

### i. Admissibility of marijuana posts as intrinsic evidence

In the government's view, [v]ideos of large quantities of marijuana with marketable names such as 'Cherry Sundae,' which [defendant] sent to other people and narrated, provide context as to [his] possession of large quantities of marijuana in his residence."[64] The government thus contends that the marijuana posts are intrinsic evidence because they "help 'complete the story' of what [defendant] intended to do with the drugs—i.e., sell them and not consume them."[65]

It is not clear whether the marijuana posts are intrinsic. First, the marijuana posts, as evidence of defendant's intent to distribute marijuana, are not inextricably intertwined with the instant offense insofar as the government's evidence of the crimes charged in the superseding indictment could not be introduced independently of the Instagram posts. Second, defendant's alleged prior instances of drug-trafficking are not necessarily preliminary to the charged crime. Defendant need not have intended to distribute marijuana on prior occasions to commit the instant offense.

Third, the Court considers whether the prior bad acts are intrinsic insofar as both the charged and uncharged offenses form part of a single criminal episode. *See Rice*, 607 F.3d at 141. The Fifth Circuit has held that uncharged offenses are part of a single criminal episode when the uncharged offenses are in close temporal

---

[63] *Id.* at 9.
[64] *Id.*
[65] *Id.*

proximity to the charged offense. *See id.* (holding that defendant's four unsuccessful robbery attempts to be intrinsic to the charged carjacking because they "occurred within a few hours of each other and involved the same group of co-conspirators"); *United States v. Coleman*, 78 F.3d 154, 156–57 (5th Cir. 1996) (holding that evidence that the defendants had attempted to carjack two luxury cars earlier in the day before eventually carjacking a Mercedes was intrinsic). Given the ten-month timeframe of the drug-trafficking evidence, the Court is not willing to conclude that such evidence constitutes part of the same criminal episode as the charged offense and is therefore intrinsic.

### ii. Admissibility of the marijuana posts pursuant to Rule 404(b)

Because the Court is not convinced that the marijuana posts would be admissible as intrinsic evidence of other acts, the Court proceeds to determine whether the marijuana posts are admissible extrinsic acts pursuant to Rule 404(b). The Court finds that the marijuana posts may be admissible pursuant to Rule 404(b).

Counts 1 and 2 of the superseding indictment require the government to prove that the defendant knowingly possessed marijuana and intended to distribute marijuana. The government contends that the marijuana posts are evidence that defendant "knowingly possessed the heroin/fentanyl mixture and marijuana in his residence with the intent to distribute those substances."[66] It therefore seems that the government seeks to admit the marijuana posts as evidence of both the knowledge and intent elements of the § 841(a)(1) charge.

---

[66] *Id.* at 15.

"By pleading not guilty, [defendant] placed [his] knowledge and intent at issue." *See United States v. Wallace*, 759 F.3d 486, 494 (5th Cir. 2014). With respect to his intent to distribute marijuana, defendant's entry of a not guilty plea with respect to these counts "raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence." *See United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009) (internal citation omitted). Where, as here, the prior extrinsic conduct—*i.e.*, publishing posts evidencing an intent to distribute marijuana— "involved the same intent required to prove the charged offense,"—i.e., the intent to distribute controlled substances—that prior conduct "is relevant and [the district court is] required only to consider whether the requirements of Rule 403 are met under *Beechum*'s second prong. *See id.*

With respect to defendant's knowledge, the government must prove that defendant knew that he was in possession of what he knew was or were controlled substances. *See McFadden v. United States*, 576 U.S. 186, 191–92 (2015). Since the government attempts to use the marijuana posts as evidence of defendant's knowledge of and familiarity with controlled substances as well as of his knowing possession of them, the marijuana posts bear on a 404(b) element besides character. Accordingly, the government's intended use of the marijuana posts satisfies step one of the Rule 404(b) analysis. *See United States v. Pizarro*, No. 16-cr-63, 2017 WL 3390247, at *2 (E.D. La. Aug. 7, 2017) (Feldman, J.) ("The Fifth Circuit has consistently affirmed the admission of prior drug-related convictions, arrests, and

other uncharged conduct to establish intent and knowledge in drug distribution cases.").[67]

As to step two, the Court finds that the marijuana posts may have a high probative value that overshadows any prejudicial effect given that the alleged prior conduct—publishing posts evidencing an intent to distribute marijuana—is identical to the charged offense with respect to its intent element. *See Beechum*, 582 F.2d at 915 ("[T]he probative value of the extrinsic offense correlates positively with its likeness to the offense charged."); *cf. Pizarro*, 2017 WL 3390247, at *2 (finding evidence of defendant's prior conviction for drug distribution "probative of his intent to distribute methamphetamine").

With respect to the prejudicial effect of this evidence, the Court is aware that the danger of unfair prejudice is "particularly great where, as here, the extrinsic activity was not the subject of a conviction." *See Beechum*, 582 F.2d at 914. However, the Court finds that any prejudicial effect in this case could be alleviated by an appropriate limiting instruction. Furthermore, the Court finds that the probative

---

[67] The Court notes that the marijuana posts may also be relevant for 404(b) purposes as to defendant's constructive possession of the controlled substances at issue. *See United States v. Arnold*, 467 F.3d 880, 885 (5th Cir. 2006) (holding a prior conviction for drug possession to be relevant to the defendant's constructive possession of the drugs at issue in a prosecution for possession with the intent to distribute a controlled substance). Specifically, they could be relevant as to whether defendant had the requisite knowledge and intent to constructively possess the marijuana and fentanyl. *See id.* ("Thus, under Rule 404(b), the 1995 drug conviction can be probative of whether Arnold controlled and possessed these drugs found at this residence in 2004."). However, it does not seem that the government is seeking to introduce the marijuana posts as evidence of his constructive possession of the controlled substances at issue.

value of the evidence will not be substantially outweighed by the risk of unfair prejudice because the incremental probative value of the evidence is significant.

Altogether, the Court finds that the marijuana posts may be admissible pursuant to Rule 404(b) to prove defendant's intent to distribute as well as his knowledge that he possessed what he knew was marijuana. *See, e.g.*, *Cockrell*, 587 F.3d at 680 (5th Cir. 2009) (collecting cases in which the Fifth Circuit held that it was not an abuse of discretion for the district court to admit extrinsic evidence of prior acts related to drug-trafficking pursuant to Rule 404(b) for the purpose of proving the defendant's intent to distribute a controlled substance and holding the same).

### iii. Authenticity of the marijuana posts

Defendant cites to *Winters* to argue that the marijuana posts are unauthenticated and therefore inadmissible.[68] Although *Winters* is applicable, it does not necessarily render the marijuana posts inadmissible. As explained above, the government must authenticate that the marijuana posts were actually the material on defendant's Instagram account. The government intends to meet this burden "through a testifying law enforcement officer . . . [who] will establish that [defendant] was in control of the Instagram account, that he can be heard narrating in the videos, and that the videos were sent from the account to other Instagram users."[69] Such testimony would be sufficient for its purpose.

---

[68] R. Doc. No. 54, ¶ 19.
[69] R. Doc. No. 59, at 2–3.

In addition, the government must meet its burden to authenticate that the photos depict what the government claims they depict. *See* Fed. R. Evid. 901(a). For the government to use the photos as evidence of defendant's intent to distribute, the government must authenticate that the photos, at least apparently, depict marijuana.

The government also asserts that the marijuana posts are relevant to defendant's knowledge insofar as they serve as evidence that defendant knowingly possessed the controlled substances seized during the search.[70] Should the government move to introduce the marijuana posts for this purpose, the government must authenticate the marijuana posts as depicting marijuana in defendant's possession. As *Winters* explains, the government may not rely solely on the fact that the marijuana posts were posted on defendant's social media account to establish that he possessed the marijuana depicted therein. *See Winters*, 530 F. App'x 390 at 395.

### c. Instagram Material Depicting Alleged Proceeds of Drug-Trafficking

The final category of Instagram material that the government seeks to admit includes "numerous videos and photographs showing him to be in possession of large amounts of cash and luxury items."[71] The government intends to introduce this material as evidence of defendant's proceeds from drug trafficking, which allegedly serves as circumstantial evidence of his intent to profit from drug trafficking.[72] The government provides several examples in its notice.[73] These examples include a

---

[70] R. Doc. No. 48, at 15.
[71] R. Doc. No. 48, at 5.
[72] *Id.*
[73] *Id.* at 5–6.

picture of defendant lying on a pile of money, stacks of $100 bills, defendant purchasing Louis Vuitton shoes with $100 bills, and the receipt for that transaction.[74] For the sake of convenience, the Court will refer to this material as "the proceeds material."

The government contends that the proceeds material is not evidence of bad acts, for which reason the evidence need not be intrinsic to be admissible nor be admissible extrinsic evidence pursuant to Rule 404(b).[75] Defendant does not argue to the contrary in its opposition.[76] And the Court agrees.

Rather than contesting the admissibility of this material on Rule 404(b) grounds, defendant once again objects to the authenticity of the material.[77] Citing to an out-of-circuit district court case, he contends that the government must prove that the photos have not been doctored.[78] The Court notes that defendant's lack of explication makes it difficult to discern the exact thrust of defendant's argument. Specifically, it is not clear whether defendant is arguing that the proceeds material consists of doctored photos of what defendant posted on Instagram, or that the photos that were posted on defendant's Instagram had already been doctored. Because defendant did not oppose the government's motion *in limine* asserting that the Instagram material that the government retrieved from Meta are true and accurate copies of the records found on Meta's system, the Court does not understand

---

[74] *Id.*

[75] *Id.* at 9.

[76] R. Doc. No. 54, ¶¶ 20–21.

[77] *Id.*

[78] *Id.* ¶ 21 (citing *United States v. Frabizio*, 445 F. Supp. 2d 152, 158 (D. Mass. 2006)).

defendant to argue that the proceeds material is doctored material of what defendant had originally posted on his Instagram. Rather, the Court understands defendant to argue that the proceeds material was doctored prior to being posted.

The case that defendant cites, *United States v. Frabizio*, 445 F. Supp. 2d 152 (D. Mass. 2006), involved a prosecution for possession of child pornography. The government had to prove that the defendant possessed images of real children. *Id.* at 154. The government offered testimony from an FBI forensic examiner of photographic evidence as proof that the photos depicted real children. Without using any specialized equipment, the examiner concluded that six of the nineteen images definitely depict real children and ten others appeared to depict real children. *Id.* The defendant filed a *Daubert* motion to exclude the examiner's testimony as unreliable. *Id.* The court ultimately granted the defendant's *Daubert* motion. *Id.* at 170.

At the threshold of its *Daubert* analysis, the court observed that "the government has not made the threshold showing that a visual observer can reliably evaluate the relevant pictures for signs of manipulation and computer-generation." *Id.* at 158. It further noted that "the evidence strongly suggests that it is extremely difficult . . . to determine whether the images involved in the instant case are real images or images created or manipulated through digital technology." *Id.*

While the observations of *Fabrizio* are germane, the case is inapposite as it does not address the government's burden for authenticating evidence. Federal caselaw makes clear that an allegation of image-manipulation is not an insurmountable obstacle to authentication. The burden of authentication "does not

require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Savarese*, 686 F.3d 1, 11 (1st Cir. 2012) (internal quotation marks and citation omitted); *accord United States v. Mehmood*, 742 F. App'x 928, 939 (6th Cir. 2018) ("Rule 901 does not erect a particularly high hurdle, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." (internal quotation marks and citation omitted)); *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014). Rather, any asserted flaws in the authentication of the testimony bear on the weight of the evidence rather than its admissibility. *See Okulaja*, 21 F.4th at 344–45.

For example, in *United States v. Farrad*, the defendant claimed that Facebook photos of him allegedly holding a firearm were photoshopped. 895 F.3d 859, 874 (6th Cir. 2018). The Sixth Circuit held that the government did enough to overcome the defendant's allegation because the jury heard evidence that the photos came from a Facebook account registered to a person with the defendant's name and location and the photos appeared to show defendant in his apartment. *Id.* at 874–75. Significantly, later in its analysis where it considered whether the government properly authenticated the photos pursuant to Rule 901, the court relied on the same evidence that it used to find the defendant's allegations of image-manipulation meritless. *See id.* at 878. The Sixth Circuit observed that "while there were still questions about the

photos that merited probing, those questions were not so glaring as to prevent the photos from clearing the relatively lower hurdle of authentication." *Id.*

To satisfy its burden pursuant to Rule 901, the government must introduce evidence that would support a finding that the luxury items or cash pictured are the proceeds of drug-trafficking. In other words, to satisfy its burden pursuant to Rule 901, the government must, as it intends to do with respect to the other Instagram material, introduce evidence linking it to defendant's Instagram account and linking the luxury goods or cash to defendant. Any photos of luxury items or cash alone must be authenticated with evidence pursuant to *Winters*. The Court will defer ruling on the authenticity of this Instagram material until trial.

### d. Prior Convictions

As explained above, defendant is alleged to have three prior felony convictions.[79] The government argues that these convictions are admissible as intrinsic evidence in some regards and as extrinsic evidence in others.

### *i. Intrinsic evidence*

The government argues that defendant's prior convictions are intrinsic to count three of the superseding indictment, which charges defendant with being a felon in possession of a firearm and ammunition pursuant to § 922(g)(1).[80] However, the government does not cite authority on this point.[81] To convict defendant of this

---

[79] R. Doc. No. 48, at 1.
[80] *Id.* at 10.
[81] *See id.*

charge, the government must prove that defendant was a convicted felon when he possessed a firearm and ammunition at the time listed in the superseding indictment.

The 2013 conviction is certainly admissible for the purposes of proving the sentencing enhancement charged pursuant to § 841(b)(1)(B). However, given the lack of briefing with respect to whether the prior felony convictions are "intrinsic" to the § 922(g)(1) charge, the Court resolves any issue relating to the felony convictions by analyzing their admissibility pursuant to the extrinsic-evidence framework.[82]

### ii. Extrinsic Evidence

The government also contends that defendant's prior convictions, including the factual basis underlying his 2013 conviction for conspiracy to distribute heroin, is admissible extrinsic evidence for Rule 404(b) purposes.  The government asserts that defendant's prior convictions are relevant as to all three counts of the superseding indictment.[83]

Counts two and three of the superseding indictment charge defendant with possessing a firearm in furtherance of drug-trafficking and being a felon in possession of a firearm and ammunition.[84] Since the government is contending that defendant had constructive possession of the firearm,[85] defendant's knowledge and intent with respect to his constructive possession of the firearm discovered in the attic is critical

---

[82] For the sake of its analysis, the Court assumes that the parties will stipulate to defendant's status as a felon pursuant to *Old Chief v. United States*, 519 U.S. 172 (1997), and to his knowledge that he was a felon at the time of the charged § 922(g)(1) offense.
[83] R. Doc. No. 48, at 11–16.
[84] R. Doc. No. 42.
[85] R. Doc. No. 48, at 12.

to the government's case. *See Williams*, 620 F.3d at 489 ("Evidence of knowledge and intent is critical in constructive-possession cases . . . ."). The government contends that defendant's 2017 conviction in St. Bernard Parish for being a felon in possession is relevant extrinsic evidence for 404(b) purposes.[86] Specifically, it seeks to introduce evidence of the 2017 conviction to prove the knowledge and intent elements with respect to defendant's constructive possession of the firearm.[87] The Court agrees.

Since the government seeks to introduce the 2017 conviction to prove defendant's knowledge and intent with respect to his constructive possession of the firearm found in the attic, the prior conviction is relevant for a purpose other than the defendant's character. Accordingly, step one of the *Beechum* test is satisfied. *See id.* at 491 ("The evidence [of defendant's prior arrests for firearm possession] was relevant to the elements of constructive possession, so the first prong of the *Beechum* test is satisfied.").

With respect to step two, the Court finds that the 2017 conviction may possess probative value that is not substantially outweighed by its undue prejudice. "There is no question that the probative value of [defendant's 2017 conviction] [is] great," because "[p]rior acts, especially those involving possession, are highly probative of a defendant's intent." *Williams*, 620 F.3d at 491 (internal quotation marks omitted). Furthermore, the government has great need of this evidence. *See id.* at 492 ("Prior act evidence is often a necessity in constructive possession cases."). And defendant's

---

[86] *Id.* at 13.
[87] *Id.*

opposition does not show that the government could introduce "alternative evidence of substantially the same or greater probative value but a lower danger of unfair prejudice." *See id.* (internal quotation marks omitted). Further, the danger of prejudice is reduced because the prior act of firearm possession was the subject of a conviction. *Cf. Beechum*, 582 F.2d at 914. (explaining that the danger of unfair prejudice is "particularly great where . . .the extrinsic activity was not the subject of a conviction."). To ensure that any prejudice is limited, the Court will issue an appropriate limiting instruction.

The admissibility of defendant's prior conviction pursuant to Rule 404(b) would not change even if defendant should elect to enter a stipulation of his prior felony convictions. Pursuant to the U.S. Supreme Court's opinion in *Old Chief v. United States*, 519 U.S. 172 (1997), district courts may not admit evidence of a prior felony conviction if the defendant stipulates to such a conviction in a § 922(g)(1) prosecution. However, as *Old Chief* itself recognized, "if, indeed, there were a justification for receiving evidence of the nature of prior acts on some issue other than status (i.e., to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,' Rule 404(b) guarantees the opportunity to seek its admission." *Id.* at 190.

Even if defendant stipulates to being a felon pursuant to *Old Chief* and stipulates to knowing he was a felon, the Court nonetheless finds that defendant's 2017 firearm conviction would be admissible for the purposes of proving the

defendant's knowledge and intent with respect to his constructive possession of the firearm. As the Eleventh Circuit has recently explained in *United States v. Hood*,

> Because the government's burden to prove that [a defendant] knew that he belonged to a category of persons prohibited from possessing a firearm is separate from its burden to prove that he knowingly possessed a firearm, his stipulation to the former does not bar the government's introduction of evidence intended to satisfy the latter requirement.

No. 21-13903, 2025 WL 1454356, at \*6 (11th Cir. May 21, 2025). The Eleventh Circuit in *Hood* affirmed the district court's admission of the defendant's prior federal gun convictions pursuant to Rule 404(b) as proof that the defendant knowingly possessed a firearm. *Id.* at 7.

Hood applied a framework for Rule 404(b) admissibility substantially similar to the analysis dictated by the Fifth Circuit in *Beechum*. *See id.* at 5. Just as under the *Beechum* framework, the Eleventh Circuit requires that admissible Rule 404(b) evidence be relevant to an issue besides the defendant's character and that "the probative value of the evidence . . . not be substantially outweighed by undue prejudice, as established in [Rule] 403." *Id.*

The Eleventh Circuit found that evidence of the defendant's prior federal gun convictions was relevant to the defendant's knowledge and satisfied Rule 403. *Id.* at 7. According to the *Hood* court, the probative value of the convictions was not substantially outweighed by the their prejudicial effect because "[a]ny risk of unfair prejudice to [the defendant] was minimal due to the district court's careful efforts to redact the conviction records, and any undue prejudice that resulted from the district

court's allowance of the prior convictions was mitigated by the three limiting instructions that it gave to the jury."[88] *Id.*

The Court finds that evidence regarding defendant's 2017 gun conviction could be admissible pursuant to Rule 404(b) even if defendant were to enter into an *Old Chief* stipulation. *Cf. United States v. Cox*, No. 13-cr-45, 2014 WL 3361998, at *2–3 (E.D. Tex. July 5, 2014) (finding evidence of prior gun convictions admissible pursuant to Rule 404(b) as proof of the defendant's knowledge and intent with respect to his constructive possession of a firearm in a § 922(g)(1) prosecution even though the defendant intended to stipulate to the prior convictions). The stipulation would not be conclusive as to defendant's knowledge and intent with respect to his constructive possession of the firearm. *See Hood*, 2025 WL 1454356, at *6. Accordingly, the evidence of defendant's 2017 gun conviction could remain both relevant and highly probative as to those elements of the offense. The prejudicial effect of admitting details of his conviction would also be reduced since the jury would already be informed of defendant's felon status on account of the stipulation.

---

[88] The limiting instruction that the district court gave read as follows:

> During the trial, you heard evidence of acts allegedly done by the Defendant on other occasions that may be similar to acts with which the Defendant is currently charged. You must not consider any of this evidence to decide whether the Defendant engaged in the activity alleged in the indictment. This evidence is admitted and may be considered by you in determining whether the Defendant had the state of mind or intent necessary to commit the crime charged in the indictment and whether the Defendant had a motive or the opportunity to commit the acts charged in the indictment.

*Hood*, 2025 WL 1454356, at *3.

The Court now turns to whether defendant's prior drug convictions, including the factual basis underlying his 2013 conviction, are admissible pursuant to Rule 404(b). Count 1 of the superseding indictment charges defendant with possession with the intent to distribute controlled substances.[89] To convict defendant pursuant to 841(a)(1), the government must prove (1) knowledge, (2) possession, and (3) intent to distribute. *See United States v. Campos-Ayala*, 105 F.4th 235, 240 (5th Cir. 2024). The government contends that defendant's prior drug convictions—a 2008 state conviction for attempted possession with the intent to distribute cocaine and a 2013 federal conviction for conspiracy to distribute and possess with the intent to distribute heroin—are "highly probative of his mental state."[90]

At step one of the *Beechum* analysis, the Court finds that defendant's prior convictions and the 2013 factual basis are relevant for a purpose besides defendant's character. First, his prior convictions involving drug trafficking are evidence that he knowingly possessed a controlled substance. Secondly, the prior convictions are evidence of defendant's intent to distribute the drugs in this case.[91] *See United States v. Salinas*, No. 16-cr-201, 2017 WL 1494506, at *2 (N.D. Tex. Apr. 25, 2017) (holding that evidence of the defendant's prior conviction for delivery of a controlled substance

---

[89] R. Doc. No. 42.

[90] R. Doc. No. 48, at 15.

[91] The Court notes that the Fifth Circuit has held that a factual basis is admissible extrinsic evidence pursuant to Rule 404(b). *See United States v. Cardenas-Luna*, 312 F. App'x 603, 604 (5th Cir. 2009) (holding that the district court did not err admitting as extrinsic evidence pursuant to Rule 404(b) the judgment, plea agreement, and factual basis related to the defendant's prior drug conviction as proof of defendant's guilty knowledge in a prosecution for possession with the intent to distribute marijuana).

"is admissible under Rule 404(b) to prove [the defendant's] knowledge or intent with respect to the drug charges").

At step two, the Court finds that the probative value of the 2013 conviction and factual basis does not appear to be substantially outweighed by the risk of unfair prejudice. Evidence of defendant's prior conviction is "clearly probative" on the issue of defendant's intent to distribute the controlled substances in question. *See United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996). It is so because the prior conviction "bear[] marked similarity to offense[] charged in the instant cause" insofar as both prior convictions and the instant offense share the element of the intent to distribute. *See id.* The fact that the prior drug conviction involved different drugs does not diminish its probative value. *See id.* Although the prior drug convictions are both over ten years old, that fact does not prevent their admission. *See id.* ("Although the remoteness of the extrinsic acts evidence may weaken its probative value, the age of the prior conviction does not bar its use under Rule 404.").

Similarly, the probative value of the 2013 conviction with respect to defendant's knowledge does not appear to be substantially outweighed by the risk of undue prejudice. The Court notes that the incremental probative value of the 2013 conviction as to defendant's knowledge that he possessed the fentanyl/heroin mixture found in the attic is especially significant given that the fentanyl mixture found in the attic was mixed with heroin.[92] Since the 2013 drug conviction involved heroin, the circumstances of the 2013 conviction are very similar to those of the instant

---

[92] R. Doc. No. 48, at 2.

offense as both the 2013 conviction and the instant offense involved possession with the intent to distribute a mixture or substance containing a detectable amount of heroin. *See Beechum*, 582 F.2d at 915. Overall, given the clear probative value of the prior convictions with respect to the issue of defendant's intent to distribute as well as to his knowledge of what he possessed, the Court finds that step two of the *Beechum* analysis appears to be satisfied.

With respect to the 2008 conviction for attempted possession with the intent to distribute cocaine, the Court finds that the probative value of the evidence appears to be substantially outweighed by the risk of undue prejudice. While "remoteness [in time] has never been held to be a per se bar to the admission of a prior conviction," remoteness may nevertheless "weaken a conviction's probative value." *See United States v. Wallace*, 759 F.3d 486, 494 (5th Cir. 2014). The Court finds that the probative value of the 2008 conviction is diminished because the offense conduct took place at least 17 years ago. With this diminution of the conviction's absolute probative value, the incremental probative value of the conviction is negligible given the strength of the government's evidentiary alternatives. As explained above, there is strong evidence of possession of controlled substances in this case. Likewise, there is strong evidence of defendant's intent to distribute controlled substances given the amount of drugs that was seized, the Instagram material, and the 2013 conviction. For this reason, exclusion of the 2008 conviction would be appropriate. *See Beechum*, 582 F.2d at 914 ("Thus, if the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily.").

39

## IV. CONCLUSION

For the reasons stated above, the Court will review the disputed evidence at trial pursuant to the guidelines set forth herein.

New Orleans, Louisiana, June 5, 2025.

 

 

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**